UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD LEE CARMICHAEL,

    Plaintiff,

v.

WILLIAM RILEY, *et al.,*

    Defendants.

Case No. C06-5542 RJB/KLS

ORDER ADOPTING, IN PART, AND DECLINING TO ADOPT, IN PART, REPORT AND RECOMMENDATION

    This matter comes before the Court on the Report and Recommendation of U.S. Magistrate Judge Karen L. Strombom. Dkt. 117. The Court has considered the Report and Recommendation, objections, oral argument on May 4, 2010, and the remaining record.

## I.    FACTS

    Plaintiff brings this 42 U.S.C. § 1983 case, asserting that Defendant William Riley, a gang investigator with the Washington State Department of Corrections, violated his right to be free from cruel and unusual punishment when Riley disclosed to staff and other inmates that Plaintiff was a gang informant and had been in protective custody. Dkt. 66. Plaintiff asserts that as a result, he has received death threats and is forced to live in protective custody. *Id.*

    The Report and Recommendation recommends granting Defendants' Motion for Summary Judgment as to Plaintiff's requested injunctive relief for a transfer by the Washington Department of Corrections. Dkt. 117, at 3. The Report and Recommendation recommends denying Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment claim. Dkt. 117. It recommends denying the motion on Plaintiff's claim for injunctive relief that Defendant Riley be enjoined from discussing Plaintiff with any correctional staff or other inmates. Dkt. 117.

    Defendants file objections, arguing that the Report and Recommendation relies too heavily on

ORDER ON REPORT AND RECOMMENDATION
Page - 1

inadmissible hearsay.  Dkt. 118.

## II. DISCUSSION

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56 (e) (1) "Affidavits; Further Testimony" provides that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Rule 56 (e)(2) continues:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Defendant argues that the Report and Recommendation does not properly determine whether there are material issues of fact as to Plaintiff's Eight Amendment claim and Defendant's claim for qualified immunity.  Dkt. 118.  Defendant argues that Plaintiff "relies on speculation and ambiguous rumors from unnamed individuals that his life was in danger and does not provide any evidence of actual threats or that Mr. Riley caused any harm to him."  *Id.*

After the Defendants' objections were filed, the parties' request for oral argument was granted. Dkt. 119.  Parties were ordered to be prepared to discuss what evidence in the record, if any, supports a causal connection between Mr. Riley's actions and the actions of those parties who are now allegedly threatening Plaintiff, hearsay issues, and the sufficiency of the evidence on liability.  *Id.*

In the record before the Court, there appear to be four people who testify as to causation:  Mr. Riley, inmate Christopher Jurnigan, inmate Clark L. Stuhr, and Plaintiff.  The testimony of each shall be examined to determine if Plaintiff has pointed to sufficient admissible evidence that Mr. Riley's actions give rise to liability and  caused Plaintiff's alleged harms.

Plaintiff fails to point to portions of Mr. Riley's testimony from which a fact finder could conclude Mr. Riley told inmates that Plaintiff was a snitch.  At oral argument, Plaintiff refers to the discussion that Mr. Riley acknowledges having with Mr. Daniel Clark, the gang investigator in the Nevada prison.  Regarding this testimony, the Report and Recommendation states:

> In his declaration, Defendant Riley states:  Once I learned of Mr. Carmichael's former protective custody status, I contacted the investigator at his Nevada institution to ask if he was aware of the protective custody status and if there had been any issues as a result of that status.  The investigator, Daniel Clark, indicated that he was not aware of that previous status and stated they did not have any current issues regarding Mr. Carmichael's protective custody status.  I expected that the information would likely be shared with other staff to protect Mr. Carmichael and that staff would not further disseminate the information to any inmates.
> In his deposition, Defendant Riley testified to the following regarding his reasons for telling Daniel Clark about Mr. Carmichael's previous protective custody status:
> Q. Did you report to Mr. Clark that Mr. Carmichael had had protective custody in Washington?
> A. I told Mr. Clark that at one time early in Carmichael's inmate career, he had a brief stint in protective custody, yeah.
> Q. Why did you tell him that?
> A.  Because we were exchanging information.
> Q. Why did he need to know that?
> A. Why did he need to know that? Because we were talking about the Aryan family.
> Q. How is that relevant to the Aryan family?
> A. I was looking at Mr. Carmichael's leadership abilities.
> Q. And how was his stay in protective custody pertinent to his leadership abilities in the Aryan family?
> A. You talked just a little ago about perceptions of inmates being in protective custody, is that a good thing or a bad thing. That's it.
> The discussion of "a little ago" referred to by Defendant Riley is as follows:
> Q. When is it safe for a prisoner to go into protective custody without engendering the ill will of the prison population?
> A. I think that's a speculative question. It's all based on that individual's needs.
> Q. If an individual were to go into protective custody because they were an informant, would the prison population, generally speaking, have a response which would threaten the safety of that individual?
> A. Only if they found out he was an informant.

Dkt. 117, at 5-6.  No showing has been made that Mr. Riley is not entitled to qualified immunity for sharing accurate information with other prison staff members.  Plaintiff argues that prison officials' failure to have a legitimate purpose in sharing information violates his Eighth Amendment rights.  Plaintiff states that Mr. Riley fails to point to a legitimate reason for disclosing to Mr. Clark that Plaintiff had once been in protective custody.  Plaintiff's position that Mr. Riley told Mr. Clark about his prior protective custody status so that Mr. Clark would draw the inference that Plaintiff was a snitch assumes that the only reason that an inmate is held in protective custody is that the inmate is a snitch.  That is not consistent with Mr. Riley's testimony that a person goes into protective custody "based on that individual's needs." Dkt. 117, at 6.  Plaintiff offers no evidence to counter this testimony.  Even if a prison official's failure to have a legitimate purpose for sharing information with other prison officials would be a violation of his Eighth Amendment rights, Mr. Riley's testimony does not demonstrate that Mr. Riley did not have a legitimate purpose.  Plaintiff does not point to other admissible evidence that

ORDER ON REPORT AND RECOMMENDATION
Page - 3

1 would support his claim that Riley did not have a legitimate purpose to discuss his prior protective

2 custody status with the gang investigators in Nevada.

3   Plaintiff fails to point to any admissible evidence that the Nevada or Washington state prison

4 officials shared the fact that he had been in protective custody with other inmates. The testimony of the

5 two inmates, Mr. Jurnigan and Mr. Stuhr, are insufficient. Mr. Jurigan's testimony was that:

6  When the contract prisoners arrived . . . they brought it to a few prisoners attention that a prisoner named James Curtis in Washington State had a web site going that claimed
7  Richard, as well as other Washington prisoners were informants. This Curtis claimed he had been told by officials that Richard had been sent to Nevada for protective custody
8  reasons, that he used to be a member of the Aryan Warriors, and had been cooperating with officials for years. These same prisoners said that several people on the yards in
9  Washington had been saying that gang investigators in Washington had been spreading these rumors about Richard to prisoners. . . About this same time, SC/O Clark, who was an
10  investigator at that time was telling other officers and inmates that Richard was not all he claimed, that inv

11 Dkt. 113, at 51. This testimony is rife with hearsay - unnamed prisoners assert that they heard from

12 someone named Curtis that he heard from unnamed gang investigators that Plaintiff was a snitch.

13 Plaintiff has proposed no basis upon which this testimony might be admissible under the evidence rules.

14 Accordingly, it should not be considered. Mr. Stuhr did testify that Mr. Riley told him that Plaintiff was a

15 snitch. Dkt. 113, at 57. Mr. Stuhr then stated that he did not tell anyone, and so Plaintiff makes no

16 showing that, even if Mr. Riley's told Mr. Stuhr that Plaintiff was a snitch, Plaintiff was harmed by that

17 statement.

18   The final possible source of evidence on causation is Plaintiff's testimony. In relation to

19 Plaintiff's testimony on causation, the Report and Recommendation states:

20  Mr. Riley met with Mr. Carmichael in Nevada sometime in April or May 2004. Shortly after that meeting he started hearing rumors that he was a snitch. An unnamed correctional
21  officer approached Mr. Carmichael and asked him: "'Was you an informant from Washington?' You know, 'Was you in PC in Washington?'" Mr. Carmichael asked the
22  officer who told him that and in response was told: "Do you know Bill Riley?" In addition to this information from the officer, Mr. Carmichael was told by prisoners that
23  Mr. Riley had spread this rumor in Washington State. "Then rumors going all around the yard that this high-level investigator out of Washington State has revealed that I've been
24  an informant for 20 years for the Department of Corrections and that I was a PC case and that I was actually sent out of state for protective custody reasons."
25
Dkt. 117, at 7-8 (*internal citations omitted*).
26
  Plaintiff fails to provide any basis upon which the hearsay testimony from this unnamed
27
correctional officer could be admitted into evidence. Accordingly, it should not be considered. Further,
28
Plaintiff offers no basis for the hearsay testimony regarding rumors from other unnamed prisoners to be

ORDER ON REPORT AND RECOMMENDATION
Page - 4

1  admitted. It also should not be considered.

2  Plaintiff has not pointed to sufficient admissible evidence in the record to support his Eighth
3  Amendment claim. The remaining circumstantial evidence, even if believed, is insufficient. The Court
4  should decline to adopt the Report and Recommendation's recommendation that Defendants' motion for
5  summary judgment on the Eighth Amendment claim should be denied. Defendants' motion for summary
6  dismissal of Plaintiff's Eighth Amendment claim should be granted and the claim dismissed.

7  Defendants object further to the Report and Recommendation's recommendation that Defendants'
8  motion be denied as to one of Plaintiff's requests for injunctive relief. Dkt. 118. The Report and
9  Recommendation recommends that Plaintiff's requests for injunctive relief regarding the Washington
10 State Department of Corrections be dismissed as moot. Dkt. 117. It recommends that Plaintiff's request
11 that Defendant be enjoined from "overseeing, participating in, or discussing Plaintiff . . . with an
12 correctional staff or officials within or out of the state of Washington Department of Corrections" not be
13 dismissed. Dkt. 117. Mr. Riley argues that he has no intention of returning to Nevada to discuss Plaintiff,
14 and so his motion to summarily dismiss this claim should be granted. Dkt. 118.

15 While the Court is sympathetic to Plaintiff's situation, lawsuits must be based on admissible
16 evidence. Plaintiff has failed to carry his burden and point to sufficient admissible evidence from which a
17 fact finder could conclude that his Eighth Amendment rights were violated. Defendant's motion to
18 summarily dismiss this request for injunctive relief should be granted.

### III.   ORDER

20 Accordingly, it is **ORDERED**:

21 •   The Report and Recommendation (Dkt. 117) is **ADOPTED, IN PART,** and **DENIED, IN PART**;
22     and
23 •   Defendant's Motion for Summary Judgment (Dkt. 111) is **GRANTED**;
24 •   Plaintiff's claims are **DISMISSED**.

ORDER ON REPORT AND RECOMMENDATION
Page - 5

1       The Clerk is directed to send copies of this Order to all attorneys of record and to the Hon. Karen L. Strombom.

DATED this 10th day of May, 2010.

/s/ Robert J. Bryan
Robert J. Bryan
United States District Judge

ORDER ON REPORT AND RECOMMENDATION
Page - 6